### In re 2435 PLAINFIELD AVENUE, INC.

**2435 Plainfield Avenue, Inc., Plaintiff,**

v.

**Township of Scotch Plains, Defendant.**

**No. CIV. A. 99–533(AET).**

United States District Court,
D. New Jersey.

May 24, 1999.

Stuart G. Brecher, Jacobson & Brecher, LLC, Mountainside, NJ, for Appellant.

Barry W. Frost, Teich, Groh & Frost, Trenton, NJ, for Appellee.

## OPINION

ANNE E. THOMPSON, Chief Judge.

This matter is before the Court on interlocutory appeal by defendant Township of Scotch Plains ("Township" or "defendant") of the August 6, 1998 Memorandum Opinion and August 28, 1998 Order, denying in part defendant's motion to dismiss, and the January 7, 1999 Order denying defendant's motion for reconsideration entered by the Honorable Stephen A. Stripp, U.S.B.J. Also before the Court is a petition for permission to appear as *amicus curiae* filed by Sanford E. Chernin, Esq. on behalf of the New Jersey League of Municipalities and the Tax Collectors and Treasurers Association of New Jersey ("amicus"). The Court will grant the petition for permission to appear as *amicus curiae* pursuant to Fed. R.App. P. 29. The Court decided the appeal without oral argument pursuant to Fed.R.Civ.P. 78. For the following reasons, defendant's appeal is granted.

## I. BACKGROUND

On December 8, 1989, plaintiff 2435 Plainfield Avenue, Inc. ("plaintiff") purchased a piece of real property commonly known as 2435 Plainfield Avenue, Block 4303, Lot 12 in the Township of Scotch Plains ("the property"). A tax sale certificate for the property was sold to the Township on December 4, 1990. The Township filed an *in rem* tax foreclosure complaint in the Superior Court of New Jersey on October 11, 1995, and published a notice of foreclosure on December 30, 1995. Final judgment of *in rem* foreclosure was entered on August 30, 1996 and recorded with the Office of the Union County Register on October 16, 1996. When foreclosure was complete in August 1996, outstanding taxes totaled $93,815.36.

On January 16, 1997, plaintiff obtained an Order to Show Cause from the Superior Court of New Jersey, Chancery Division as to why the final judgment of *in rem* foreclosure should not be reopened. In support of its application, plaintiff argued that the Township violated its duty of good faith and fair dealing by secretly foreclosing on the property, and violated due process by failing to provide proper notice.[1]

---

1. Specifically, plaintiff argued that defendant posted a notice of foreclosure nineteen days after the date of publication, rather than fifteen days after the publication date as required by Rule 4:64–7(d), and mailed the notice of foreclosure to persons in interest eighteen days after the date of publication, rather than seven days after the publication

484

Plaintiff also argued that defendant would obtain a windfall if the foreclosure judgment was not set aside. On March 21, 1997, the Honorable John M. Boyle, J.S.C. denied plaintiff's application. In a bench opinion, Judge Boyle held that there was no "relationship between the parties which would give rise to the imposition of the covenants" of good faith and fair dealing. In respect of defendant's failure to provide proper notice, Judge Boyle held that any short delay did not prejudice plaintiff:

> The important thing is that we should not lose track of the bull's eye. The bull's eye here is: Did the DiFrancescos pay their taxes, did they get due process, did they drop the ball, was the Township proper in securing its judgment. And the answer, of course, is yes to all of those questions. The Township did exactly legally what it was entitled to do.

In denying the application, Judge Boyle did not specifically rule on plaintiff's windfall argument. Plaintiff's appeal of Judge Boyle's decision is still pending.

On February 17, 1998, debtor filed a voluntary Chapter 11 petition. On March 18, 1998, debtor filed the underlying complaint to set aside the final judgment. On March 20, 1998, plaintiff filed an adversary proceeding against the Township. In the first count, plaintiff alleges that it entered a contract for sale of the property to K. Hovnanian and Companies of North Jersey, Inc. ("Hovnanian") on January 4, 1996, that the Township was aware of Hovnanian's proposed development of the property, and that Hovnanian was willing to pay the tax arrears. Plaintiff alleges that plaintiff, through Ernest DiFrancesco, forwarded to Carmen Mendiola, attorney for the Township in the foreclosure proceeding, a proposal to make partial tax payments and that the proposal was never presented to the Township. Plaintiff alleges that it did not receive a reasonably

equivalent value for the property, because it was worth $900,000.00 at the time of foreclosure. Based on these facts, plaintiff alleges that defendant foreclosed on the property with the intent to hinder, delay and defraud plaintiff and that such foreclosure should be set aside as it was a fraudulent conveyance pursuant to FED.R.CIV.P. § 25:2–1 et seq. In the second count, plaintiff alleges that defendant breached its duty of good faith and fair dealing.

On April 23, 1998, defendant filed a motion to dismiss plaintiff's complaint pursuant to FED. R. BANKR.P.7012(b)(6). In a Memorandum Opinion filed August 6, 1998 and Order filed August 28, 1998, Judge Stripp granted defendant's motion as to count two of plaintiff's complaint, finding plaintiff's good faith and fair dealing claim barred by collateral estoppel. Judge Stripp denied defendant's motion as to count one, finding that plaintiff stated a claim under a fraudulent conveyance theory and under an "equity theory."

In respect of the fraudulent conveyance theory, Judge Stripp held that the Fraudulent Conveyances Act, N.J. STAT. ANN. §§ 25:2–3 ("FCA"), permits creditors and "others," such as plaintiff, to avoid fraudulent transfers. Judge Stripp noted that, "while N.J. Stat. Ann. § 54:5–104.32 specifically states that a tax foreclosure cannot be construed as a fraudulent transfer under the [Uniform Fraudulent Transfer Act], N.J. Stat. Ann. § 25:2–20 et seq., it does not say that such foreclosure cannot be considered a fraudulent conveyance under the FCA, N.J. Stat. Ann. § 25:2–1 to – 6." In respect of the equity theory, Judge Stripp held that, under the Supreme Court's decision in BFP v. Resolution Trust, 511 U.S. 531, 542, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), "a foreclosure sale may be set aside '(under state foreclosure law, rather than fraudulent transfer law) if the price is so low as to "shock the conscience or raise a presumption of fraud or

date as required by Rule 4:64–7(c). Defendant admitted that its notice was late, but argued that plaintiff was not prejudiced

thereby because final judgment was entered seven months later and recorded ten months later.

unfairness." ' " Judge Stripp found further support for the equity theory under New Jersey state caselaw. Judge Stripp concluded that the tax sale could be set aside for inadequate price pursuant to N.J. Ct. R. 4:50–1(f) "which allows a court to grant relief from a judgment or order for 'any other reason justifying relief from the operation of the judgment or order.' " Judge Stripp held that count one, under either theory, was not barred by collateral estoppel or the Rooker–Feldman doctrine.

On September 9, 1998, defendant filed a motion for reconsideration of the August 6, 1998 Memorandum Opinion and August 28, 1998 Order. Defendant argued that the equity theory was barred by collateral estoppel, the fraudulent conveyance theory was barred by the entire controversy doctrine, and that application of the FCA in this case was contrary to New Jersey state law and public policy. Defendant also argued that the court should consider newly discovered evidence that the alleged Hovnanian contract, which established a $900,-000.00 value for the property, was falsified. On December 14, 1998, Judge Stripp heard oral argument and denied the motion from the bench. Judge Stripp held that the equity theory was not barred by collateral estoppel because Judge Boyle had not considered the issue of inadequate price. Judge Stripp found that defendant waived the entire controversy doctrine defense by failing to raise it in its original motion to dismiss. Alternatively, Judge Stripp observed that whether plaintiff should be barred from raising an FCA claim for failure to raise such claim in the state court "is a defense which is properly preserved for trial." Relying on a plain reading of N.J. STAT. ANN. § 54:5–104.32, Judge Stripp rejected defendant's argument that allowing an FCA claim to set aside a foreclosure sale was contrary to state law and policy. Finally, Judge Stripp declined to consider extrinsic evidence that the Hovnanian contract was falsified at the motion to dismiss stage. Judge Stripp signed the Order denying defendant's motion on January 7, 1999.

By Order dated March 5, 1999, this Court granted a motion by appellant Township of Scotch Plains for leave to appeal the August 6, 1998 Memorandum Opinion, the August 28, 1998 Order, and the January 7, 1999 Order entered by Judge Stripp.

## II.  DISCUSSION

### A.  Standard of Review

The Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines,* 145 F.3d 124, 131 (3d Cir.1998). When addressing mixed questions, the court divides the questions "into their respective components" and applies "the appropriate test" to each. *In re Brown,* 951 F.2d 564, 567 (3d Cir.1991).

### B.  Arguments of Parties and Amicus

Defendant argues that Judge Stripp erred in refusing to dismiss count one of plaintiff's complaint. Defendant argues that permitting plaintiff to proceed under either the fraudulent conveyance or the equity theory is contrary to state law and policy, and undermines the Supreme Court's decision in *BFP.* Defendant argues that the fraudulent conveyance theory is barred by the entire controversy doctrine, and that the equity theory is barred by collateral estoppel and the Rooker–Feldman doctrine. Finally, defendant argues that the bankruptcy court should have considered newly discovered evidence that plaintiff submitted a falsified contract.

In response, plaintiff argues that recognizing a cause of action under the FCA or under an equity theory is not contrary to state law and policy. Plaintiff relies on a plain reading of N.J. STAT. ANN. § 54:5–104.32 to argue that the New Jersey Legislature intended only to prevent courts from setting aside foreclosure sales as fraudulent transfers pursuant to the

UFTL, not pursuant to the FCA. In support of the equity theory, plaintiff relies on *BFP* and New Jersey caselaw for its argument that tax sales may be set aside for inadequate price. Plaintiff contends that defendant waived the entire controversy doctrine defense by failing to raise it in its original motion to dismiss. Plaintiff contends that it is not collaterally estopped from relying on the equity theory because the state court did not render a decision on the issue of price disparity. Finally, plaintiff explains that, although it supplied the bankruptcy court with the wrong contract, a contract with Hovnanian did in fact exist.

The amicus favors defendant's position. First, the amicus argues that the effect of the bankruptcy court's decision is to enjoin the collection of municipal taxes in violation of 26 U.S.C. § 7421. Second, the amicus argues that the bankruptcy court dismissed important distinctions between foreclosure under a mortgage and foreclosure of a tax sale certificate. The amicus contends that foreclosure of a tax sale certificate and subsequent entry of final judgment does not constitute a transfer or sale under the FCA. Third, the amicus argues that Judge Stripp failed to give full faith and credit to Judge Boyle's decision and that plaintiff's claims are barred by the entire controversy doctrine and principles of res judicata. Finally, the amicus argues that Judge Stripp erred in relying on mortgage foreclosure caselaw to support an equity theory and that defendant should not be punished for following the law.

### C. Fraudulent Conveyance Theory

N.J. STAT. ANN. § 54:5–86 provides that, where a "municipality is the purchaser of a tax sale certificate, the municipality ... may, at any time after the expiration of the term of 6 months from the date of sale ... institute an action to foreclose the right of redemption." Once an action is instituted, the right to redeem exists until barred by judgment of the Superior Court. *See id.* A municipality may also proceed

*in rem* to foreclose the right to redeem, after recording its tax sale certificate in the office of the county recording officer and providing notice. *See* N.J. STAT. ANN. §§ 54:5–104.32 to –104.48. Final judgment foreclosing the right to redeem will not be reopened except "upon the grounds of lack of jurisdiction or fraud in the conduct of the suit." *See* N.J. STAT. ANN. § 54:5–87. Moreover, final judgment, and the recording thereof, will not be deemed "a sale, transfer or conveyance of title or interest to the subject property under the provisions of the [UFTA]." N.J. STAT. ANN. § 54:5–87; N.J. STAT. ANN. § 54:5–104.32.

In this case, the Township filed an *in rem* tax foreclosure complaint, recorded its tax sale certificate, and provided statutory notice. Final judgment was filed and recorded. Plaintiff accepts that the UFTA, as modified by the Tax Sale Law, does not allow judgment to be set aside as a fraudulent transfer. Rather, plaintiff argues that the UFTA and FCA provide independent causes of action and that the New Jersey Legislature, in drafting the Tax Sale Law, did not intend to exclude tax foreclosures from the FCA. Judge Stripp interpreted the FCA and the Tax Sale Law to allow the court to set aside the tax foreclosure judgment as a fraudulent conveyance. Reviewing this interpretation *de novo*, the Court finds that the bankruptcy court erred.

The Fraudulent Conveyances Act, N.J. STAT. ANN. §§ 25:2–1 to –6, was repealed to the extent that it was inconsistent with the Uniform Fraudulent Conveyances Law, N.J. STAT. ANN. §§ 25:2–7 to –19 ("UFCL"), enacted in 1919. *See Trus Joist Corp. v. Treetop Assoc., Inc.,* 97 N.J. 22, 29–30, 477 A.2d 817 (1984); *Jugan v. Friedman,* 275 N.J.Super. 556, 569 n. 3, 646 A.2d 1112 (App.Div.), *cert. denied,* 138 N.J. 271, 649 A.2d 1291 (1994). In 1988, the New Jersey Legislature enacted the Uniform Fraudulent Transfer Act, N.J. STAT. ANN. §§ 25:2–20 *et seq.,* which replaced the UFCL. *See Jugan,* 275 N.J.Super. at 569 n. 3, 646 A.2d 1112; *Flood v.*

*Caro Corp.,* 272 N.J.Super. 398, 403, 640 A.2d 306 (App.Div.1994). Courts holding that the FCA was repealed in part by the UFCL relied on the settled rule of statutory construction governing inferential repeals. *See Conway v. Raphel,* 102 N.J.Eq. 531, 533, 141 A. 804 (1928) (citing *Terrone v. Harrison,* 87 N.J.L. 541, 543–44, 94 A. 600 (1915); *Hotel Registry Corp. v. Stafford,* 70 N.J.L. 528, 537, 57 A. 145 (1904); *Anderson v. City of Camden,* 58 N.J.L. 515, 521, 33 A. 846 (1896)). This same tenet of statutory construction supports this Court's holding that the FCA is repealed to the extent that it is inconsistent with the UFTA.

■ The UFTA, as modified by the Tax Sale Law, prevents a court from setting aside a tax foreclosure judgment as a fraudulent conveyance. The UFTA supersedes the FCA to the extent that it is inconsistent with the UFTA. Therefore, the FCA is superseded to the extent that it would allow a court to set aside a tax foreclosure as a fraudulent conveyance. This interpretation is consistent with the Legislature's expressed intent in amending the Tax Sale Law to put tax foreclosure judgments beyond the reach of the UFTA: "These amendments are intended to prevent the bankruptcy courts from using the 'uniform fraudulent conveyance law' to conclude that the foreclosure and redemption bar judgments are not final and could therefore be set aside by the bankruptcy trustee." Assembly, No. 936, L.1994, c. 32. The Court finds that plaintiff may not proceed under a fraudulent conveyance theory.

### D. Equity Theory

New Jersey Court Rule 4:50–1 provides

On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A motion pursuant to N.J. Ct. R. 4:50–1 must "be made within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50–1 not more than one year after the judgment, order or proceeding was entered or taken." N.J. Ct. R. 4:50–2.

■ Judge Stripp relied on N.J. Ct. R. 4:50–1(f) as a basis for allowing plaintiff to seek to set aside the tax foreclosure judgment on an equity theory. In fact, the sole ground for relief available to plaintiff is that specified in R. 4:50–1(f), because plaintiff filed its adversary proceeding in bankruptcy court more than one year after the entry of final judgment of tax foreclosure. *See Monmouth County Div. of Social Servs. v. P.A.Q.,* 317 N.J.Super. 187, 196, 721 A.2d 738 (App.Div.1998). Due to the importance of finality of judgments, relief under N.J. Ct. R. 4:50–1(f) will be granted "only if another subsection of the rule does not apply and 'truly exceptional circumstances are present.'" *Vogelbacher v. Director, Div. of Taxation,* 15 N.J.Tax 106, 118 (N.J. Tax Ct.1995) (quoting *Baumann v. Marinaro,* 95 N.J. 380, 395, 471 A.2d 395 (1984)).

■ Judge Stripp relied on *BFP v. Resolution Trust,* 511 U.S. 531, 542, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), for the proposition "that a foreclosure sale may be set aside '(under state foreclosure law, rather than fraudulent transfer law) if the

price is so low as to "shock the conscience or raise a presumption of fraud or unfairness." ' " Judge Stripp also found that New Jersey caselaw supported the court's power to "set aside a foreclosure for equitable reasons including inadequate price." To the extent that the equity theory articulated by the bankruptcy court relies on a presumption of fraud, relief under N.J. Ct. R. 4:50–1(f) is not available because another subsection of the rule, N.J. Ct. R. 4:50–1(c), applies and plaintiff did not comply with the one-year filing requirement. The court's more general formulation, that N.J. Ct. R. 4:50–1(f) may provide relief from final judgment of tax foreclosure based on evidence of price disparity, finds no support in the caselaw.

The *BFP* Court, in considering a mortgage foreclosure sale, held "that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP*, 511 U.S. at 545, 114 S.Ct. 1757. In *McGrath v. Simon*, 170 B.R. 78, 82 (Bankr. N.J.1994), Judge Stripp extended *BFP* to tax foreclosures:

> A tax foreclosure is as much a forced sale process as a mortgage foreclosure. Moreover, the policy considerations favoring deference to mortgage foreclosure sales apply with as much force to tax foreclosure sales.
>
> . . . .
>
> It is troublesome that the sale price will often, if not always, be considerably lower on a tax foreclosure than on a mortgage foreclosure, because the amount of taxes due is usually much less than the amount due on a mortgage. This will mean that difference between the fair market value and the forced sale price is going to be greater with a tax foreclosure than with a mortgage foreclosure. BFP makes clear, however, that fair market value is simply not the value in a forced sale context, and this court sees no reason why that is any less

true if the forced sale happens to be in a tax foreclosure.

For this reason, and in light of amendments to N.J. STAT. ANN. § 54:5–87 which removed tax foreclosures from the UFTA, the court "conclude[d] that the reasoning of *BFP* applie[d] with as much force to tax foreclosures in New Jersey as it does to mortgage foreclosures." *Id.* at 83.

■ This Court agrees. Defendant complied with the requirements of the Tax Sale Law. The price paid by defendant is presumed adequate. The Tax Sale Law provides procedures through which an aggrieved debtor may seek to set aside a final judgment of tax foreclosure. *See* N.J. STAT. ANN. § 54:5–87; *Morris Township v. Washington Heights Dev. Co.*, 137 N.J.Eq. 595, 598, 46 A.2d 45 (1946). Allowing plaintiff to proceed under an equity theory pursuant to N.J. Ct. R. 4:50–1(f) would nullify these procedures and the limits they impose, especially that language of the Tax Sale Law which modifies the UFTA and provides that tax foreclosure judgments shall not be set aside on fraudulent conveyance grounds. *See* N.J. STAT. ANN. § 54:5–87; N.J. STAT. ANN. § 54:5–104.32. The Court finds that plaintiff may not proceed under an equity theory.

In light of the Court's determination that the bankruptcy court erred in permitting plaintiff to proceed under the FCA and under an equity theory, it is unnecessary to reach defendant's entire controversy doctrine, collateral estoppel, and newly discovered evidence arguments.

### III. CONCLUSION

For the aforementioned reasons, the Court will grant defendant's appeal and remand the case to the Bankruptcy Court. An appropriate order is filed herewith.

### *ORDER*

For the reasons set forth in the Court's Opinion filed herewith, and for good cause shown,

IT IS on this 24th day of May 1999,

ORDERED that the petition for permission to appear as *amicus curiae* filed by Sanford E. Chernin, Esq. on behalf of the New Jersey League of Municipalities and the Tax Collectors and Treasurers Association of New Jersey is granted; and it is further

ORDERED that the appeal by defendant Township of Scotch Plains of the August 6, 1998 Memorandum Opinion, August 28, 1998 Order, and January 7, 1999 Order entered by the Honorable Stephen A. Stripp, U.S.B.J. is granted; and it is further

ORDERED that this case is remanded to the Bankruptcy Court.